IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

UNITED STATES OF AMERICA,
          Plaintiff,

    vs

BRIAN GIDNEY,
          Defendant.

Criminal Action
No. 20-7-12

---

    Transcript of motion to revoke or amend detention proceedings, held on Wednesday, July 22, 2020, United States District Court, Johnstown, Pennsylvania, before the Honorable Kim R. Gibson, U.S. District Court Senior Judge.

APPEARANCES:

For the Government:      MAUREEN SHEEHAN-BALCHON, Esq.
                                 United States Attorney's Office
                                 319 Washington Street
                                 Johnstown, PA  15901
                                 Maureen.Sheehan-Balchon@usdoj.gov

For the Defendant:       KOMRON J. MAKNOON, Esq.
                                 Maknoon & Associates
                                 309 Smithfield Street, 4th Floor
                                 Pittsburgh, PA  15222
                                 kjm@maknoon-law.com

Court Reporter:    Shirley Hall, RDR, CRR
                     U.S. Courthouse, Suite 204
                     208 Penn Traffic Building
                     319 Washington Street
                     Johnstown, PA  15901
                     shirleyhall_uscra@yahoo.com

Proceedings recorded by digital stenography; transcript produced by computer-aided transcription.

|  |  |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | (In open court and via Zoom.) |
| 3 | THE COURT: Good morning. Court is in session. |
| 4 | MR. MAKNOON: Good morning, Your Honor. |
| 5 | ALL PRESENT: Good morning, Judge. |
| 6 | THE COURT: Can everyone on the Zoom call hear me? |
| 7 | MR. BOSSART: Yes. |
| 8 | MR. MAKNOON: Yes. |
| 9 | MS. SHEEHAN-BALCHON: Yes. |
| 10 | THE COURT: All right, okay. We're going to be |
| 11 | conducting this detention hearing by Zoom. First, let's get |
| 12 | the participants on the record, starting with counsel, and |
| 13 | maybe you can introduce your witnesses and representatives if |
| 14 | you have any. |
| 15 | Go ahead. Counsel? |
| 16 | MS. SHEEHAN-BALCHON: Maureen Sheehan-Balchon on |
| 17 | behalf of the United States, Your Honor. I don't have any live |
| 18 | witnesses today. |
| 19 | MR. MAKNOON: Good morning, Your Honor. Komron John |
| 20 | Maknoon for Brian Gidney. This is stipulation to the detention |
| 21 | hearing transcripts and argument; no witnesses. |
| 22 | THE COURT: Okay. And then also participating on the |
| 23 | call, I see Mr. Bossart from Pretrial. Can you hear me, |
| 24 | Mr. Bossart? |
| 25 | MR. BOSSART: I can. Good morning, Judge. |

1       THE COURT: Okay. And then we also have the Defendant
2   present, correct?
3       THE DEFENDANT: Yes.
4       THE COURT: Mr. Gidney -- okay. And who else is on
5   the call?
6       MR. MAKNOON: Leah Welker, third party custodian.
7       THE COURT: All right. Can you hear me, Miss Welker?
8       MR. ESTALL, LAW CLERK: She's on mute.
9       THE COURT: I think you're on mute. Can you hear me,
10  Miss Welker?
11      MS. WELKER: Yes, I can hear you very faintly.
12      THE COURT: Okay, all right. I'll try to keep my
13  voice up so everyone can hear.
14      This is the time and place set for hearing on the
15  motion to revoke or amend order of detention.
16      There is some background noise coming from somewhere.
17  Unless you're speaking, it would probably be best to mute your
18  computer.
19      MR. MAKNOON: Mr. Gidney, are people talking at the
20  jail?
21      THE DEFENDANT: Slightly in the background.
22      MR. MAKNOON: Okay. If you do hear it, I would put
23  your computer on mute, if you're able to; or just wave to
24  someone to do that.
25      THE COURT: All right. Well, if anyone does not have

1    their computer muted and you hear background noise where you're
2    located, please mute it so we can hear each other.
3           This is -- as I said, this is a hearing to consider
4    the motion to revoke or amend the order of detention,
5    Document 375 in the docket of this case.  This is
6    20-Criminal-07.  And in this case there is a rebuttal
7    presumption that no condition or combination of conditions will
8    reasonably assure the safety of any other person and the
9    community because the offense charged in this case is an
10   offense for which the maximum term of imprisonment is ten years
11   or more.
12          And that is set forth in the Controlled Substances
13   Act, namely 21 United States Code, Section 846; namely,
14   conspiracy to distribute and possession with intent to
15   distribute 50 grams or more of methamphetamine and 500 grams or
16   more of a mixture and substance containing a detectable amount
17   of methamphetamine.
18          So we will proceed, as I understand it, counsel, using
19   the transcript from the last proceeding and also hearing
20   argument from counsel.  Is that your intent, for both counsel?
21          MR. MAKNOON:  Yes, Your Honor.
22          THE COURT:  Okay.
23          MS. SHEEHAN-BALCHON:  Yes, Your Honor.
24          THE COURT:  Okay.  All right.  If you do wish to
25   present any witnesses, please let me know and we will have them

1  sworn and they can testify accordingly.  I do have a copy of
2  the transcript.
3         First, let me establish whether everyone consents to
4  having this conducted by Zoom.  For the United States, do you
5  consent to that, Attorney Sheehan-Balchon?
6         MS. SHEEHAN-BALCHON:  Yes, Your Honor.
7         THE COURT:  And, Mr. Maknoon, do you consent to that
8  on behalf of the Defendant?
9         MR. MAKNOON:  Yes, Your Honor.
10        THE COURT:  And, Mr. Gidney, do you consent to this
11 being done by Zoom, sir?
12        THE DEFENDANT:  Yes, Your Honor.
13        THE COURT:  Okay.  All right.  Then as I said, I do
14 have a copy of the Pretrial Services report.  I have a copy of
15 the order entered by Judge Pesto.  I have a copy of the
16 transcript of the proceeding held on June 19, 2020, before
17 Magistrate Judge Pesto.
18        Do counsel wish for those items to be made part of the
19 hearing today?
20        MR. MAKNOON:  Yes, Your Honor.
21        MS. SHEEHAN-BALCHON:  Yes, sir.
22        THE COURT:  Okay.  Then I will admit the transcript of
23 June 19, 2020, before Magistrate Judge Pesto as an exhibit for
24 this hearing.  I will also rely upon the contents of the
25 Pretrial Services report, although I will not make it an

1  exhibit today.  And I also will rely upon the contents of the
2  order of detention pending trial issued by Magistrate
3  Judge Pesto on June 19, 2020.
4       Having said all that, I will now permit counsel to
5  proceed.  And since this is a presumption case,
6  Attorney Maknoon, I'll let you proceed first to argue and set
7  forth what you believe overcomes the presumption.
8       MR. MAKNOON:  Thank you, Your Honor.  Based upon the
9  agreement with the Government, there's a stipulation, as you
10 said, to the facts.  I will not rehash all of the facts; I'll
11 highlight a few.
12      Also, as Your Honor said, this is a presumption case
13 under 3142.  And, you know, from my reading of what has been
14 admitted of the detention order, you know, it's a presumption
15 case; but the issues of -- there were other factors that were
16 warranted or that were put in focus:  Weight of the evidence,
17 history of violence, and danger to the community.
18      Now, I believe the order -- and it's obviously for
19 your review -- states that Mr. Gidney overcame his burden, his
20 rebuttable presumption, so to speak.  So I'll just briefly
21 address a couple of these factors.
22      So with regards to the weight of the evidence -- and I
23 apologize, Your Honor, if my argument gets a little confusing
24 because I've researched some case law on this issue -- and I'm
25 sure you're familiar with it -- that's come up in this

1  indictment, which is the Government proffer and things of that
2  nature.
3          So, with weight of the evidence, it is -- it is my
4  understanding, and primarily in the Eighth Circuit, that weight
5  of the evidence, although a factor, is the least important
6  factor.  I would also say that there are issues whether the
7  indictment alone creates probable cause.  So -- so first we
8  have weight of the evidence; and we have testimony -- I believe
9  an ATF agent testified -- and he discussed things that were --
10 that he discovered at the time of the arrest that would be
11 weight of the evidence and the Government's proffer.
12         The second issue is history of violence.  The record
13 does not show to my knowledge from the stipulated transcripts
14 that my client has been convicted of crimes that have to do
15 with violence or some concerns that the Court would have of,
16 you know, concerns of violence or safety of the community.
17         I will say that there was a Government proffer with
18 regards to a suppress that were discussed in the transcript as
19 far as one of the co-defendants and perhaps it was somebody not
20 coming through financially, allegedly, on money; Mr. Gidney was
21 angry and had some threats.
22         At that time I -- you know, I did raise the concern --
23 and I know it's before you -- but the concern is that I was
24 unable to cross examine upon that proffer.  And it -- it -- I
25 guess the issue that I'm trying to say is -- is if -- if the

1    Government establishes through proffer, which 3142 does not
2    permit -- I know 3142 says that the Defendant can proceed by
3    proffer, but it doesn't say that the Government can proceed by
4    proffer.  So, therefore, on a very legitimate issue, when I
5    would attempt to cross examine, because the detention order
6    says that the Defendant overcame his burden, but there are
7    other factors to be considered as far as threat of violence and
8    things of that nature which ultimately led to the determination
9    of his detention.
10           So, I researched the issue of the Government proffer
11   and my inability to cross examine.  And the Court may be
12   familiar with it, but there were two cases that I found.  The
13   one was United States versus Suppa, S-U-P-P-A, 799 F.2d 115,
14   Third Circuit.  And the other case is United States versus
15   Delker, D-E-L-K-E-R, 757 F.2d 1390, Third Circuit, 1985.
16           What the Suppa case says is -- and it really doesn't
17   address the issue.  It basically says that because the -- the
18   Defendant didn't overcome his rebuttable presumption, the Court
19   really didn't get into an analysis of whether it was
20   justifiable for the Government to make its proffer and the
21   defense have the inability to cross examine.
22           So -- and it somewhat makes sense because one of the
23   issues left on the table for a very relevant point of this
24   case, which is danger to the community, the proffer was made
25   that the Defendant was making threats.  And my inability to

1   cross examine would leave the record somewhat incomplete
2   because my question or issue or concerns to be raised would be:
3   Did Mr. Gidney take action on these?  Were they more specific
4   threats?  All of the things that you would -- that you would
5   want to ask to kind of discern if this was just out of anger
6   and a true threat, which would put the risk of safety and the
7   community at risk, or is it just somebody getting mad.  I'm
8   going to defer to Your Honor on that issue.
9           I would argue that because the Government proffer and,
10  from my reading of the case law, because the Defendant overcame
11  his rebuttable presumption, it's more relevant because then
12  when it would go back upon the Government to have to argue
13  after the Defendant overcame his presumption, it would be based
14  upon a proffer.  And, therefore, for it to be based upon a
15  proffer, without the opportunity to cross examine, I think it's
16  relevant.
17          I apologize if that was somewhat confusing.  The case
18  law is a little bit confusing, quite frankly.
19          So -- and as far as the record that was stipulated to,
20  Leah Welker at the time of the detention hearing -- I do not
21  believe that Pretrial Services was able to confirm she was a
22  third party custodian.  At that time I think Pretrial Services
23  was asked and her -- you know, she was questioned as far as
24  where she lives, her employment, seems to be a very reliable
25  person who would report any, you know, deviations from the

1   conditions that the Court would impose.
2   　　　　I think that it's also established that Mr. Gidney has
3   a drug addiction, and there would be a question of could he
4   attend some type of inpatient drug treatment and, you know,
5   would that address risk of flight or perhaps danger to the
6   community, whether it would be 90 days or whatever the Court
7   would impose.
8   　　　　And the other thing that I do have to throw this in
9   here on the side is the ability to have Mr. Gidney free -- and
10  I know it's not so much in the 3142 factors.  I mean I went
11  into the jail and saw Mr. Gidney.  And as a result of that, I
12  learned that I was exposed -- you know, directly exposed to
13  Covid-19, which prompted me to call the jail, having his pod
14  get locked down, having him to go back into quarantine, people
15  getting upset with him.
16  　　　　Due to the nature of my job, having to go to the
17  Allegheny County jail, the courthouse where the cases are high,
18  and now my fear to go to Cambria County after having to deal
19  with the warden -- who is a very nice guy -- but having to have
20  the pod locked down, it is difficult to counsel my client under
21  the conditions that I have.  And with that, I would defer to
22  Your Honor.
23  　　　　THE COURT:  All right.
24  　　　　For the United States?
25  　　　　MS. SHEEHAN-BALCHON:  Yes, Your Honor.

1           The Government does rely on the transcript in this
2  case which, for the record, was quite complete.  The Government
3  addressed certain aspects of the Bail Reform Act as it
4  pertained to Mr. Gidney by a proffer, including offense
5  conduct, the weight of the evidence, history and
6  characteristics of this Defendant, and his threats of violence
7  to a co-conspirator.
8           I would also indicate, which the Court will obviously
9  read upon its own, the testimony of ATF Agent William Isber.
10 He actually testified at the hearing.  The defense had a full
11 and fair opportunity to cross examine him.  The defense prior
12 to the hearing was provided with discovery that would have
13 permitted a full and fair cross examination, including the
14 search warrant that was executed at Mr. Gidney's residence on
15 June 9th of 2020, the day that he was arrested; including the
16 return and inventory receipt of that search warrant, the
17 evidence that was recovered, and the actual wiretap intercepts
18 indicating Mr. Gidney's proclivity towards violence.
19          Your Honor, as the transcript reflects, on the date of
20 Mr. Gidney's arrest at his residence where he resided alone,
21 agents found approximately a kilogram of methamphetamine; that
22 100 grams of that had been repackaged for resale already and
23 were found in close proximity to a loaded .45 caliber pistol.
24 That's in addition to the approximately ten other guns that
25 were recovered from Mr. Gidney's residence.  And that is all

1  included in the transcript that the Court will review.
2           We've had the issue, Your Honor, of whether or not the
3  Government can proceed by proffer at detention hearings
4  addressed multiple times during hearings held before
5  Judge Pesto.  In each of those instances he had agreed --
6  Judge Pesto agreed to accept the evidence by proffer from the
7  Government.
8           The Government also relies upon United States versus
9  Delker that Mr. Maknoon has already cited.  In addition to
10 that, Your Honor, United States versus Rinaldi, R-I-N-A-L-D-I.
11 That was recently decided in the Middle District of
12 Pennsylvania in April of this year.  The Westlaw citation is
13 2020 Westlaw 1984299.  And, finally, United States versus
14 Flanders, which was decided in 2010.  That's also a Westlaw
15 citation, 2010 WL 4054442.
16          In each of those, Your Honor, they discussed the Bail
17 Reform Act, particularly Section 3142(f).  And they also
18 affirmed that the Government can proceed by proffer at a
19 detention hearing.  And specifically in Rinaldi, it discusses
20 that the Defendant does not have a right of confrontation of
21 the Government's evidence at a detention hearing.  So I would
22 ask the Court to accept in this instance as well the
23 information that was presented to the Court by proffer.
24          The Pretrial Services report, Your Honor, the
25 Government respectfully disagrees with Judge Pesto's decision

1  in the detention order issued after the June 19th hearing that
2  the defense, without presenting witnesses or evidence and based
3  solely on an incomplete Pretrial Services report alone, has
4  overcome the presumption of detention.  We don't think that the
5  presumption was overcome.  However, we do believe that we
6  presented enough clear and convincing evidence that this
7  Defendant is dangerous despite Judge Pesto's finding that the
8  presumption had been overcome.
9          Secondly, as to the Pretrial Services report,
10 Your Honor, the third party custodian being proffered by the
11 Defendant has never been examined or interviewed by Pretrial
12 Services.  And I don't believe at this point that they can give
13 a position to the Court as to whether or not she is an
14 appropriate third party custodian.
15         Other than that, Your Honor, there is no concrete
16 release plan for Mr. Gidney.  He wants to return to the same
17 residence where agents recovered all of the drugs and guns that
18 I just described for the Court.
19         Your Honor, even if the Court finds that the
20 Government's proffer of Mr. Gidney's threats of violence which
21 are detailed in the transcript are not persuasive to the Court,
22 our position is that the Court could find by clear and
23 convincing evidence based upon the recoveries from Mr. Gidney's
24 home on the day of the search warrant that he is, in fact, a
25 danger to the community.  I'd ask the Court to consider that

1  the concept of dangerousness in the Bail Reform Act encompasses
2  the broader danger that this Defendant may engage in criminal
3  behavior to a detriment of the community if he is released.
4              And that's the Government's argument, Your Honor.
5              THE COURT:  All right.
6              Officer Bossart, there's been reference made to the
7  Pretrial Services report.  And it is -- I have possession of
8  that.  It's dated June 11th, 2020.  Do you have any updates to
9  that that you need to address with the Court at this time or
10 not?
11             MR. BOSSART:  We do not, Judge, no.  Not at this time.
12             THE COURT:  All right.
13             Attorney Maknoon?
14             MR. MAKNOON:  Your Honor, may I state something?
15             THE COURT:  Go ahead.  Do you have a response?
16             MR. MAKNOON:  Briefly, Your Honor.
17             With -- if the third custodian report -- and I
18 understand, you know, these are times and people are working
19 remotely, if that is a factor that would make a difference to
20 the Court, I would respectfully request the ability to -- for
21 Pretrial Services to complete the interview of Leah Welker.
22 She did speak at the detention hearing to the point that
23 Judge Pesto even knew where she lived and that it was an
24 upscale neighborhood and where she worked; and it was UPMC
25 dating back to Altoona General Hospital, you know -- you know,

1   quite some history.
2          The second point that I would raise is Mr. Gidney does
3   not want to return to the place of where -- of where the raid
4   was.  That place was not owned by him.  And I apologize, I
5   don't think I'm going outside of the stipulated transcript, but
6   that was his -- a place owned by his uncle that we just -- the
7   record was insufficient to determine, you know, how many people
8   had access to it and, most importantly, you know, was that
9   serial number for the gun owned by someone other than
10  Mr. Gidney?
11         I mean you've got a hunting camp, basically, in the
12  middle of nowhere, not owned by Mr. Gidney, with a few people
13  outside at the time of the raid.  And I believe that was in the
14  transcript.  I believe there was Mr. Gidney and two other
15  individuals outside of the place at the time of the raid.  So
16  it does raise a question as far as, you know, whose pistol that
17  was.
18         But, most importantly, he wants to go live with
19  Leah Welker, who is his long-time paramour; and I would
20  respectfully request the opportunity for Pretrial Services to
21  be able to vector out and make sure that's okay.  I understand
22  things are crazy, but I did think that was being done.
23         THE COURT:  All right.  Anything further from the
24  United States or from Pretrial Services or from defense
25  counsel?

1        MS. SHEEHAN-BALCHON:  Not from the United States,
2   Your Honor.
3        MR. BOSSART:  Judge, just briefly -- and I had done
4   this in realtime, I believe, at the time we did the detention
5   hearing with Judge Pesto.  But in reviewing records of the
6   Pennsylvania Unified Judicial System, an electronic criminal
7   records search on Miss Welker does not reveal any misdemeanor
8   or felony convictions within the state of Pennsylvania.  I can
9   represent that to the Court at this time.
10       THE COURT:  All right, thank you.
11            All right, counsel and Mr. Gidney, I'm going to take
12  this under advisement.  I want to review the transcript and
13  also the documents referenced earlier, and I'll file a written
14  decision very soon.
15            Anything further?
16       MS. SHEEHAN-BALCHON:  No; thank you, Your Honor.
17       MR. MAKNOON:  Nothing, Your Honor, unless Miss Welker
18  should contact Pretrial?
19       THE COURT:  I'll leave that up to Mr. Bossart at this
20  point in time.  He's given me the information he currently has;
21  and if he believes he needs some sort of interview, he can do
22  that.
23            I'm going to order a transcript of the proceeding
24  today also to have to review, and I'll allocate the costs
25  equally to the parties; and Shirley Hall, the court reporter,

1    can prepare the appropriate order and I'll enter that today or
2    whenever I receive it.
3            We're going to move this as quickly as we can.  We
4    won't make you wait an extensive period of time.  We'll go
5    ahead and review this and enter an order soon.
6            All right, that concludes --
7            MR. MAKNOON:  Thank you.
8            THE COURT:  -- this proceeding unless any of the
9    parties have anything further.
10           MR. MAKNOON:  Nothing, Your Honor.
11           MS. SHEEHAN-BALCHON:  No, Your Honor.
12           MR. BOSSART:  No.
13           THE COURT:  Well, thank you.  We'll end the Zoom call
14   at this point and thank you for your participation.
15           MR. MAKNOON:  Thank you.
16           MS. SHEEHAN-BALCHON:  Thank you.
17       (Zoom call ended at 10:30 a.m.)
18                        C E R T I F I C A T E
19   I, Shirley Ann Hall, certify that the foregoing is a correct
20   transcript for the record of proceedings in the above-titled
21   matter.
22
23
24                              s/Shirley Ann Hall
                                Shirley Ann Hall, RDR, CRR
25                              Official Court Reporter